United States District Court
Southern District of Texas
**ENTERED**
August 05, 2026
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

| | | |
|---|---|---|
| DONALD LYNN THOMPSON, JR., | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 3:25-cv-00253 |
| | § | |
| MATAGORDA COUNTY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND RECOMMENDATION

This civil rights case is before me on a motion to dismiss for the second time. I previously recommended that Plaintiff Donald Thompson's claims against all defendants be dismissed, but that Thompson be given the opportunity to amend his complaint. *See* Dkt. 42. Judge Jeffrey V. Brown adopted my recommendation, *see* Dkt. 44, and Thompson amended his complaint. *See* Dkt. 45. The Matagorda County Defendants now move to dismiss Thompson's amended complaint.[1] *See* Dkt. 52. Having reviewed the briefing, the record, and the applicable law, I recommend that the motion be granted. I also recommend that the court sua sponte dismiss Buster Jackson d/b/a Jackson Towing Services.

## BACKGROUND[2]

On May 14, 2023, Thompson was operating a vehicle in Markham, Texas, when he was stopped and arrested by Defendant Deputy Raymond Gonzales for driving with an expired registration. Gonzales handcuffed, arrested, and transported Thompson to the Matagorda County Jail where he was detained for

---

[1] The Matagorda County Defendants are Matagorda County, Texas; Jennifer Chau, the Matagorda County Attorney; Judge Jason Sanders, Justice of the Peace Precinct 1; Judge Mark Finlay, Justice of the Peace Precinct 4; Matagorda County Sheriff's Deputies Raymond Gonzales and J. Wamget; Michaela Riley; and Jane Doe Deputy, alleged to be employed by the Matagorda County Sheriff's Department.

[2] These facts, which I accept as true, are taken from Thompson's first amended complaint and the attachments to it. *See* Dkts. 45–48.

approximately 18 hours. In connection with his arrest, the vehicle that Thompson was driving was towed by Jackson Towing Services after Gonzales and Jane Doe Deputy allegedly searched it with flashlights.

On May 15, 2023, Defendant Judge Jason Sanders, Justice of the Peace for Precinct 1, conducted a magistration and entered a disposition of time served against Thompson.

On June 22, 2023, a vehicle tow hearing was held before Defendant Judge Mark Finlay, Justice of the Peace for Precinct 4. Defendant County Attorney Jennifer Chau appeared at the hearing, as did Buster Jackson, the owner of the company that towed the vehicle that Thompson was driving. During the hearing, Thompson's wife requested the body-worn and dash camera footage of Thompson's arrest. Judge Finlay denied that request and ruled that the tow was lawful. Michaela Riley, a records clerk, denied Thompson's request for access to body camera and dash camera footage.

Thompson asserts nine causes of action: (1) unlawful seizure against Gonzales; (2) unlawful arrest against Gonzales; (3) unlawful search against Gonzales and Jane Doe Deputy; (4) excessive force against Gonzales and Wamget; (5) deprivation of due process against Judge Sanders based on jurisdictional deprivation; (6) deprivation of due process against Chau, Riley, and Judge Finlay based on the suppression of exculpatory evidence; (7) malicious prosecution against Gonzales, Sanders, and Chau; (8) civil conspiracy to violate constitutional rights against all defendants; and (9) *Monell* liability against Matagorda County. The Matagorda County Defendants have moved to dismiss under Rule 12(b)(6) for failure to state a claim.

## LEGAL STANDARD

A defendant may move to dismiss a complaint when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). Conversely, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (cleaned up).

When evaluating a Rule 12(b)(6) motion, I accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Cummings v. Premier Rehab Keller, P.L.L.C.*, 948 F.3d 673, 675 (5th Cir. 2020) (quotation omitted). I "do not, however, accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." *Benfield v. Magee*, 945 F.3d 333, 336–37 (5th Cir. 2019) (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The Fifth Circuit "hold[s] pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, but pro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level." *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016); *see also Twombly*, 550 U.S. at 555.

## ANALYSIS

The central dispute in this case is whether Gonzales lawfully stopped and arrested Thompson for driving with an expired registration sticker.

### A. GONZALES LAWFULLY STOPPED THOMPSON

Thompson concedes that the registration on the vehicle he was driving "was factually expired." Dkt. 45 at 4. There is ample authority, from the United States Supreme Court down to the lowest courts, stating that: "If an officer has probable

cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *see also Jaycox v. Pyle*, No. 6:18-cv-00016, 2021 WL 1140865, at *6 (S.D. Tex. Mar. 25, 2021) ("The failure to display proper vehicle registration through a valid registration sticker . . . [is] lawful grounds for arrest under Texas law."); *State v. Gray*, 158 S.W.3d 465, 469 (Tex. Crim. App. 2005) ("[A]n arrest for a minor traffic offense is not an unreasonable seizure under the Fourth Amendment."); *Hodnett v. State*, No. 05-01-01323-CR, 2002 WL 31845821, at *2 (Tex. App.—Dallas Dec. 20, 2002, pet. ref'd) ("When an officer has probable cause to believe a person is committing an offense, even a traffic offense, an officer can reasonably arrest that person.").

Against this mountain of authority, Thompson now argues that Gonzales's "own written records prove he lacked reasonable suspicion to initiate the stop and lacked probable cause to execute a custodial arrest within two minutes." Dkt. 45 at 2. This is simply incorrect. Taking Thompson's alleged facts as true, Thompson "executed a lawful left-hand turn to travel southbound on Avenue I, at which point Defendant Gonzales activated his emergency overhead lights and initiated a traffic stop." *Id.* at 9. According to Thompson, Gonzales was "traveling south-to-north" on Avenue I. *Id.* Thus, when Thompson turned to travel southbound on the same road that Gonzales was traveling northbound, Thompson's vehicle was facing Gonzales, and Gonzales could have easily visualized the registration sticker on the driver's side of the windshield. In any event, to have lawfully stopped Thompson, Gonzales needed only reasonable suspicion that the registration sticker was expired. *See United States v. Montes-Hernandez*, 350 F. App'x. 862, 867 (5th Cir. 2009) ("To have an objectively reasonable suspicion, an officer does not have to determine that a suspect has in fact violated the law."). Thus, Thompson's unlawful seizure claim fails.

### B. Gonzales Lawfully Arrested Thompson

Similarly, Gonzales lawfully arrested Thompson for driving with an expired registration sticker. Thompson makes much of the fact "that no electronic verification was conducted prior to the stop." Dkt. 45 at 11. But Gonzales was not required to verify anything electronically. "A person commits an offense if the person operates on a public highway during a registration period a motor vehicle that does not properly display the registration insignia issued by the department that establishes that the license plates have been validated for the period." Tex. Transp. Code Ann. § 502.473(a). Texas law also prohibits displaying a registration insignia "assigned for a registration period other than the registration period in effect." Tex. Transp. Code § 502.475(a)(3). Thus, the display offense did not depend on whether an electronic inquiry would have shown that the underlying registration had been renewed. In other words, even if Thompson's registration had been current, driving with an expired registration sticker is against the law, and the admittedly expired sticker gave Gonzales probable cause to arrest Thompson. Accordingly, Thompson's unlawful arrest claim against Gonzales fails.

### C. Gonzales and Doe Did Not Search Thompson's Vehicle

Thompson alleges that while he was handcuffed, "Gonzales and Jane Doe Deputy immediately began searching [his] vehicle with flashlights." Dkt. 45 at 15. Taking this fact as true, it does not constitute a search. The United States Supreme Court has stated that it is "beyond dispute that . . . shining [a] flashlight to illuminate the interior of [a plaintiff]'s car trenched upon no right secured to the latter by the Fourth Amendment." *Texas v. Brown*, 460 U.S. 730, 739–40 (1983). Thus, Gonzales and Doe committed no Fourth Amendment violation by simply shining their flashlights into Thompson's vehicle.

### D. Gonzales and Wamget Did Not Use Excessive Force

Thompson contends that "Gonzales and Wamget used objectively unreasonable and excessive physical force" when they arrested him. Dkt. 45 at 28. Specifically, Thompson alleges that "Gonzales yanked [Thompson] from his

vehicle by opening the door from the outside (the interior handle was broken—the only means of opening the door) without warning, before [Thompson] could fully lower his window." *Id.* According to Thompson, "Defendants then pushed [Thompson] against the convertible top despite [his] verbal warnings of severe pain from his deteriorating shoulders, hips, and knees." *Id.*

"Although [the Fifth Circuit] no longer require[s] significant injury for excessive force claims, the injury must be more than *de minimis*." *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005) (cleaned up). Thompson's conclusory allegation that he suffered "[e]xacerbation" of "severe, known physical disabilities (deteriorating shoulders, hips, and knees)" does not suffice to establish an injury that would qualify for an excessive force claim. Dkt. 45 at 35. And while "psychological injuries can serve as a basis for § 1983 liability," Thompson "does not demonstrate that he suffered psychological injury" from his arrest. *Tarver*, 410 F.3d at 752. Rather, Thompson simply states that he has experienced emotional distress and mental anguish. *See* Dkt. 45 at 35. Such conclusory allegations "do not suffice." *Iqbal*, 556 U.S. at 678. Thus, Thompson's excessive force claim should be dismissed.

### E. JUDGE SANDERS AND JUDGE FINLAY ARE ABSOLUTELY IMMUNE

Thompson alleges that Judge Sanders deprived Thompson of his right to due process when Judge "Sanders, acting in the clear absence of all jurisdiction, unilaterally imposed a criminal conviction without a formal charging instrument, without a plea, and without an open court proceeding." Dkt. 45 at 28–29. Additionally, Thompson alleges his "offense occurred within JP 4, not JP 1" and "[n]o legal charging instrument existed to confer subject-matter jurisdiction upon the JP 1 court for a JP 4 offense." *Id.* at 29. These allegations cannot overcome Judge Sanders's judicial immunity.

The Fifth Circuit has explained the contours of judicial immunity:

> Absolute judicial immunity extends to all judicial acts that are not performed in the clear absence of all jurisdiction. *Adams v. McIlhany,* 764 F.2d 294, 297 (5th Cir. 1985). Thus, a judge has no

> immunity (1) for actions taken outside of his judicial capacity, or (2) for actions that are judicial in nature, but occur in the complete absence of all jurisdiction. . . .
>
> In determining whether [a judge's] actions were "judicial in nature," this Court considers four factors: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. *McAlester v. Brown,* 469 F.2d 1280, 1282 (5th Cir. 1972). The four factors are to be broadly construed in favor of immunity, and immunity should not be denied where the denial carries the potential of raising more than a frivolous concern in a judge's mind that to take proper action might expose him to personal liability. *Adams,* 764 F.2d at 297. In some situations, immunity is to be afforded even though one or more of the *McAlester* factors is not met.

*Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993) (cleaned up).

Thompson alleges that "Judge Sanders had [Thompson] pulled from holding and brought to the jailhouse picket window for what [Thompson] assumes was a magistration. Due to the small county atmosphere, [Judge] Sanders addressed [Thompson] by name and stated, 'we're going to get you outta here with time served.'" Dkt. 45 at 16. This sequence satisfies all four factors required for judicial immunity.

Although a jailhouse is not a courtroom or the judge's chambers (second factor), the Texas Judicial Council has recognized that "[m]agistration proceedings usually occur in jail facilities." Texas Judicial Council, Public Trust and Confidence Committee Report and Recommendations (2024), https://www.txcourts.gov/media/1459239/public-trust-and-confidence-committee-report-2024.pdf (last visited Aug. 4, 2026). Indeed, Thompson himself assumed that Judge Sanders was there for "a magistration," which is a judicial function (first factor). Thompson had a case before the court: Case No. 1-23-TR-0306 (third factor). Judge Sanders's sentencing of Thompson arose out of that case (fourth factor). Thus, all four factors weigh in favor of upholding Judge Sanders's judicial immunity.

Thompson believes that Judge Sanders acted without jurisdiction because Thompson's "offense occurred within JP 4, not JP 1" and "[n]o legal charging instrument existed to confer subject-matter jurisdiction upon the JP 1 court for a JP 4 offense." Dkt. 45 at 29. "Where a court has *some* subject-matter jurisdiction, there is sufficient jurisdiction for immunity purposes." *Malina*, 994 F.2d at 1125. There is no question that Judge Sanders generally has jurisdiction to adjudicate traffic offenses. *See Thompson v. Matagorda County*, No. 3:25-cv-00253, 2026 WL 1133358, at *3 (S.D. Tex. Apr. 27, 2026) ("Judge Sanders acted well within his jurisdiction when he credited Thompson's time served toward the fine for an expired registration."), *report and recommendation adopted*, No. 3:25-cv-00253, 2026 WL 1300546 (S.D. Tex. May 12, 2026). Nothing about Thompson's amended pleading changes this inescapable fact. Accordingly, all Thompson's claims against Judge Sanders should be dismissed based on judicial immunity.

Likewise, Thompson's claims against Judge Finlay should also be dismissed on judicial immunity grounds. While Thompson argues against Judge *Sanders's* judicial immunity in his amended complaint, Thompson fails to even reference Judge *Finlay's* judicial immunity or attempt to explain why it would not apply. Similarly, in his response brief, Thompson argues why he believes that judicial immunity does not shield Judge Sanders but mentions Judge Finlay only in passing. Because Judge Finlay's denial of Thompson's request for video evidence was a quintessential judicial function (first factor); that occurred in a courtroom (second factor); which centered around a case pending before the court (third factor); and that arose out of Thompson's appearance before Judge Finlay in his judicial capacity (fourth factor), Judge Finlay is absolutely immune.

### F. NEITHER CHAU NOR RILEY SUPPRESSED EXCULPATORY EVIDENCE

Thompson alleges that his right to due process was violated when "Chau and Riley intentionally suppressed material, exculpatory video evidence [at the June 22, 2023 administrative tow hearing] that would have exposed Defendant Gonzales's perjury and the lack of probable cause." Dkt. 45 at 29. Thompson claims

that this evidence would have shown: (1) that he was parked in a private driveway; (2) that Gonzales could not have observed Thompson's registration sticker; (3) that Gonzales never ran Thompson's plates before activating his lights; (4) that Thompson was compliant; and (5) that any search was warrantless. *See id.* at 30. Taking all these allegations as true, none of them show that the video evidence Thompson sought was exculpatory because none of them suggest that Thompson's registration was not expired.

### G. THOMPSON'S MALICIOUS PROSECUTION CLAIMS FAIL

Having established that Gonzales lawfully stopped and arrested Thompson, Thompson's malicious prosecution claims against Gonzales, Judge Sanders,[3] and Chau necessarily fail. To state a constitutional malicious prosecution claim, Thompson must allege:

> (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) *the absence of probable cause for such proceeding*; (5) malice; and (6) damages.

*Espinal v. City of Houston*, 96 F.4th 741, 748 (5th Cir. 2024) (emphasis added). Because there was probable cause to arrest Thompson, he cannot prevail on a malicious prosecution claim.

### H. THOMPSON'S DETENTION CLAIM FAILS

Thompson contends that his 18-hour detention was unconstitutional. To the extent this claim rests on the duration of his detention alone, it fails. Thompson alleges that he was brought before Judge Sanders and released within approximately 18 hours. A probable-cause determination occurring within 48 hours is presumptively prompt absent facts showing that the delay was undertaken to gather additional evidence, motivated by ill will, or imposed for delay's sake. *See County of Riverside v. McLaughlin*, 500 U.S. 44, 56–57 (1991). Thompson

---

[3] As established above, Judge Sanders has absolute judicial immunity irrespective of the merits of Thompson's malicious prosecution claim.

advances no such allegations. Accordingly, Thompson has not overcome the presumption that his 18-hour detention was constitutional.[4]

### I. *MONELL* LIABILITY AGAINST MATAGORDA COUNTY

As I have explained once before, Thompson's claims against Matagorda County should be dismissed because "Thompson cannot establish a constitutional violation that would give rise to *Monell* liability." *Thompson*, 2026 WL 1133358, at *4; *see also Romero v. City of Grapevine*, 888 F.3d 170, 178 (5th Cir. 2018) (holding that claims against a municipality "cannot survive" where the plaintiff "failed to demonstrate" a constitutional violation); *Whitley v. Hanna*, 726 F.3d 631, 648 (5th Cir. 2013) ("All of Whitley's inadequate supervision, failure to train, and policy, practice, or custom claims fail without an underlying constitutional violation.").

### J. "NO DEPRIVATION; NO § 1983 CONSPIRACY."[5]

Thompson alleges that all "Defendants reached a meeting of the minds and acted jointly and in concert to deprive [Thompson] of his constitutional rights." Dkt. 45 at 31. Thompson's "conspiracy claim [is] properly dismissed because [he] has not plausibly pled any underlying constitutional deprivation by the defendants." *Armstrong v. Ashley*, 60 F.4th 262, 280 (5th Cir. 2023).

### K. THOMPSON HAS NO CLAIM AGAINST JACKSON

Thompson's only claim against Jackson is for civil conspiracy to violate Thompson's constitutional rights. *See* Dkt. 45 at 31. Because Thompson's civil conspiracy claim fails, Jackson should be dismissed from this lawsuit.[6]

---

[4] *Jauch v. Choctaw County*, a case on which Thompson relies for the notion that his detention was unconstitutional, involved 96 days of detention without an appearance before a judge and is not analogous. *See* 874 F.3d 425, 428–29 (5th Cir. 2017).

[5] *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019).

[6] "A district court may dismiss a complaint for failure to state a claim on its own motion as long as the procedure is fair." *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 888 (5th Cir. 2021) (quotation omitted). Fairness "requires both notice of the court's intention and an opportunity to respond." *Davoodi v. Austin Indep. Sch. Dist.*, 755 F.3d 307, 310 (5th Cir. 2014) (quotation omitted). "This report is such notice. [Thompson's] objections

## CONCLUSION

For the reasons discussed above, I recommend that the Matagorda County Defendants' motion to dismiss (Dkt. 52) be granted. I also recommend that the court sua sponte dismiss Jackson as a defendant in this lawsuit.

The parties have 14 days from service of this Memorandum and Recommendation to file written objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.

SIGNED this 5th day of August 2026.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

to this report, if any, are his opportunity to be heard." *Crosswell v. Rodriguez*, No. 4:22-cv-01105, 2023 WL 6206911, at *8 (S.D. Tex. Sept. 8, 2023), *report and recommendation adopted as modified sub nom. Crosswell v. Martinez*, No. 4:22-cv-01105, 2023 WL 6207754 (S.D. Tex. Sept. 25, 2023), *aff'd*, 120 F.4th 177 (5th Cir. 2024).